## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL SCHROETER GmbH & KO.,** | : | |
| **KG., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs**, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CRAWFORD & COMPANY,** | : | **No. 09-946** |
| **Defendant.** | : | |

### MEMORANDUM

**Schiller, J.**                                                                                    **May 19, 2009**

Plaintiffs are German corporations that sued Defendant Crawford & Company ("Crawford"), an American insurance company, in the Philadelphia Court of Common Pleas. They assert negligence and breach of implied contract claims based upon Defendant's allegedly faulty inspection of apple shipments in Venezuela.[1] Defendant removed the Complaint to this Court on March 5, 2008.

Currently before the Court is Defendant's motion to dismiss for failure to join an indispensable party or, in the alternative, pursuant to the doctrine of *forum non conveniens*. Crawford asserts that its wholly-owned Venezuelan subsidiary, Crawford Venezuela Adjustadores de Perdidas CA ("Crawford Venezuela") is an indispensable party to this case because Crawford Venezuela, not Crawford, conducted the inspections. Defendant also asserts that the doctrine of

---

[1] Plaintiffs are Carl Schroeter GmbH & KO, KG; Allianz Global Corporate & Specialty GmbH; Victoria Versicherung, AG; Zurich Versicherung AG; Helvetia Versicherungen; AXA Versicherungs AG; SIGNAL IDUNA Allgemeine VAG; UNIQA Versicherungen AG; WUBA VAG; Gothaer Allgemeine VAG; Deutsche Rhederei Versicherungs-AG; F. Laeisz Versicherung AG; Gaede & Glauerdt Assecuradeur GmbH & Co.; Kravag-Logistic Versicherungs-Aktiengesellschaft; DBV Winterthur Versicherung AG; NIKOLAI Assecuranz GmbH; Mund & Fester; and Schwarzmeer und Ostsee Versicherungs-Aktiengesellschaft SOVAG.

*forum non conveniens* mandates dismissal because Venezuela provides an adequate alternative forum for this dispute and the relevant interests weigh in favor of trial there. For the following reasons, unless Plaintiffs amend their Complaint to assert an alter-ego and/or agency theory of liability against Crawford, Plaintiffs' Complaint shall be dismissed for failure to join Crawford Venezuela. Defendant's motion to dismiss pursuant to the doctrine of *forum non conveniens* is denied.

## I.    BACKGROUND

Crawford is a Georgia corporation with its principal place of business in Atlanta, Georgia. (Compl. ¶ 23; Notice of Removal ¶ 6.) Crawford Venezuela, a Venezuelan company, is a wholly-owned subsidiary of Crawford & Company International, Inc., which, in turn, is a wholly-owned subsidiary of Crawford. (Powers Decl. ¶¶ 3-4; Def.'s Mot. to Dismiss [hereinafter Def.'s Mot.] Ex. D [Certifica].) The core dispute stems from two shipments of apples.

On or about September 1, 2005, Copefrut, S.A., shipped eight forty-foot containers of refrigerated apples to Valenfrut from Puerto de Valparaiso, Chile to Puerto de La Guaira, Venezuela. (Compl. ¶ 25; Def.'s Mot. Ex. B [Jan. 16, 2006 Final Report] at 2.) When Valenfrut received the merchandise on September 29, 2005 in Venezuela, it reported that the cargo had been damaged. (*See* Def.'s Mot. Ex. B at 1.) Accordingly, Grudemann & Wilde Versicherungsmakler retained Crawford Venezuela, presumably on Plaintiffs' behalf, to inspect the damaged cargo. (*Id*. at 3.) Crawford Venezuela contacted Valenfrut to schedule an inspection, which was conducted on October 3, 2005. (*Id.*)

Gian Luca De Leonardis, Crawford Venezuela's Managing Director, and Ivan Jose Gil Plaza, a Loss Adjuster for Crawford Venezuela, prepared a final report containing their assessment of the

loss.  (Def.'s Mot. Ex. B.)  The report, dated January 16, 2006, indicated that it was sent to Grudemann & Wilde Versicherungsmakler in Caracas, Venezuela.  (*Id.* at 1.)  The report concluded that the ship carrying the apples suffered a power supply failure that increased the temperature inside the containers holding the apples, causing them to rot.  (*Id.* at 7.)  The report assessed the damage at $168,256.05.  (*Id.* at 8, 10.)

Copefrut made a second shipment of apples to Valenfrut on September 25, 2005.  (Compl. ¶ 26; Def.'s Mot. Ex. C [Mar. 2, 2006 Final Report].)  As with the first shipment, the apples were reportedly damaged when they arrived in Venezuela.  (Compl. ¶ 27; Def.'s Mot. Ex. C at 3.)  Valenfrut contacted Crawford Venezuela to report the loss, and Crawford Venezuela inspected the merchandise.  (Def.'s Mot. Ex. C at 3.)  A March 20, 2006 final report prepared by De Leonardis and Plaza of Crawford Venezuela reported that, again, the loss was caused by a power supply failure on the vessel transporting the apples.  (*Id.* at 8.)  The report, which was  sent to Grudemann & Wilde Versicherungsmakler in Caracas, assessed the total loss at $199,902.34.  (*Id.* at 1, 8, 12.)

Plaintiffs, all of whom are identified by the Complaint as underwriters of the insurance policy covering Copefrut's maritime fruit shipments, initiated this action to recover the monies they paid as a result of Crawford Venezuela's allegedly negligent inspections.[2]  (Compl. ¶¶ 1-22.)  According to the Complaint, Crawford Venezuela acted negligently by: (1) failing to properly identify the apples; (2) treating each shipment as one consignment rather than surveying each container within the shipments; (3) failing to photograph the shipments; (4) condemning the shipments as total losses due to damage from a power failure in the vessels when no such failure occurred; (5) concluding that

_____

[2] Plaintiff Carl Schroeter GmbH & KO, KG is described as the "lead underwriter." (Compl. ¶ 1.)

the apples were all in the same condition when temperature recordings suggested otherwise; (6) improperly advising Valenfrut as to the available insurance coverage; (7) failing to place the shipping line on notice of the loss or damage, so as to permit Plaintiffs to pursue a subrogation claim against the shipping line; (8) failing to timely notify the consignor of the loss; (9) failing to invite the steamship company to conduct a joint survey of the damage; and (10) failing to preserve Plaintiffs' subrogation rights.  (*Id.* ¶¶ 30, 39.)   As a result of Crawford Venezuela's alleged negligence, Plaintiffs were required to pay $370,647.78 — the value of the total loss, per Crawford Venezuela's reports, plus costs.  (*Id.* ¶¶ 32, 41.)

## II.    DISCUSSION

### A.    Failure to Join an Indispensable Party

Crawford asserts that Crawford Venezuela is both a necessary and indispensable party to this litigation because the Complaint is premised on Crawford Venezuela's acts, but Crawford is not liable for its subsidiary's actions.  Thus, according to Crawford, this Court cannot afford Plaintiffs any relief in Crawford Venezuela's absence, rendering Crawford Venezuela a necessary party.  However, Crawford claims that Crawford Venezuela cannot be joined because this Court lacks personal jurisdiction over Crawford Venezuela and joinder would destroy diversity and, thus, dismissal is required.[3]  Plaintiffs respond that Crawford may be held liable for its subsidiary's actions based on an alter ego or agency theory.  Since both theories necessitate factual inquiries, Plaintiffs

---

[3] Diversity jurisdiction does not exist over lawsuits between aliens on one side and aliens and citizens on the other.  *See Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 498-99 (3d Cir. 1997) (applying complete diversity rule to such cases "makes sense"); *see also United Nimba Citizens Council v. Gayetay*, Civ. A. No. 07-3389, 2007 WL 2892004, at *2 (E.D. Pa. Oct. 2, 2007).

assert that dismissal is inappropriate at this time and that discovery should be permitted on the relationship between Crawford and Crawford Venezuela.

Federal Rule of Civil Procedure 19 governs when an absent party must be joined to a lawsuit. Rule 19(a)(1) requires an absentee to be joined, rendering him a "necessary" party, when:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1); *see Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).

If joinder is not feasible because, for instance, the court lacks personal jurisdiction over the absent party or joinder would eviscerate subject matter jurisdiction, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). A court should consider the following factors in making this assessment: (1) whether judgment rendered in the person's absence "might prejudice [the absentee] or the existing parties;" (2) the extent to which the court could lessen any such prejudice; (3) "whether a judgment rendered in the person's absence would be adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.* A court making a Rule 19 determination may consider evidence outside the pleadings. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001), *aff'd*, 65 F. App'x

5

803 (3d Cir. 2003).

In *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, Jurimex, a foreign corporation, asserted contract and tort claims against Case Corporation, alleging that Case failed to compensate Jurimex for acting as Case's local liaison to facilitate the sale of agricultural equipment to a Kazakh buyer. Case moved to dismiss for failure to join Case's foreign subsidiaries — Case France and Case Europe — because Jurimex primarily interacted with those subsidiaries with respect to the transaction forming the basis of the complaint and joinder would have destroyed diversity jurisdiction.

The district court concluded that Case had "submitted sufficient evidence to infer that most of Plaintiffs' interactions and negotiations regarding the Transaction were with the Subsidiaries and not with Defendant." *Id.* at 340. Accordingly, the absent subsidiaries were indispensable because "when a plaintiff seeks to hold a parent company liable for the conduct of the parent's subsidiary, the subsidiary is a necessary and indispensable party under Rule 19." *Id.* (citing *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1520-22 (D. Minn. 1996)). The court held that dismissal was appropriate irrespective of Jurimex's argument that Case was vicariously liable for its subsidiaries' actions under a principal-agent theory because Jurimex had failed to allege any principal-agent relationship in its complaint, which only referred to Case generically and did not acknowledge the subsidiaries at all. *Id.* at 341 n.4; *Jurimex*, 65 F. App'x at 804. Jurimex subsequently moved to amend its complaint to plead agency and joint tortfeasor theories, however, the court denied the motion as futile. *Jurimex*, 65 F. App'x at 807.

On appeal, the Third Circuit affirmed the dismissal of Jurimex's complaint, but reversed the denial of Jurimex's motion to amend. The Third Circuit first concluded that the district court

"properly applied a Rule 19 analysis and dismissed the complaint" and "properly denied discovery on the agency theory at that time because there was nothing in the complaint to which the theory could relate." *Id.* at 804. However, the court reversed the denial of the motion to amend because the district court summarily rejected Jurimex's allegations of Case's control over its subsidiaries as conclusory. At the complaint stage of the litigation, Jurimex should have been permitted to amend its complaint because it was entitled to "bring a claim against Case as the parent corporation without joining the subsidiaries if Jurimex prove[d] there [was] an agency relationship between Case and its subsidiaries." *Id.* at 808.

*Jurimex* controls the outcome of this case. Here, foreign plaintiffs are suing an American corporate defendant, seeking to hold that defendant liable for its foreign subsidiary's conduct. Many courts have concluded that when a defendant is sued solely in connection with its subsidiary's conduct, the subsidiary is a necessary and indispensable party. *See, e.g.*, *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (joinder of subsidiary required when "[subsidiary] was more than an active participant in the conversion alleged by the [plaintiffs]; it was the primary participant"); *Enza, Inc. v. We the People, Inc.*, 838 F. Supp. 975, 978 (E.D. Pa. 1993) (entity was indispensable party when "all of the actions of fraud alleged in the complaint occurred on behalf of, or in the name of [the entity]"); *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 847 (D. Del. 1978) (dismissing contract action for failure to join indispensable subsidiary after discovery revealed lack of agency relationship between subsidiary and defendant-parent). *But see, e.g.*, *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1121 (D.C. Cir. 1991) (rejecting *Freeman* rule since it is not tied to the language of Rule 19 and runs contrary to the principle that agents are generally not indispensable parties to suits against principal); *In re Rio Piedras Explosion*

7

*Litig.*, 179 F.R.D. 59, 63 (D.P.R. 1998) (Rule 19 "would have no logical meaning if joint tortfeasors perceived as primary participants, as opposed to others, could, because of such participation, attain a Rule 19(a) status that the rule otherwise denies them."). *Jurimex*, although unpublished, persuades this Court that the Third Circuit would adopt this approach. Plaintiffs' desire to hold Crawford liable for the acts and omissions of Crawford Venezuela renders Crawford Venezuela a necessary party to this action. *See, e.g., Jurimex*, 201 F.R.D. at 340. Since Crawford, as a corporate grandparent, is not liable for its subsidiary's actions absent an agency or alter ego relationship, this Court cannot award complete relief to Plaintiffs in Crawford Venezuela's absence. *See Japan Petroleum*, 456 F. Supp. at 836 ("Since no judgment could be rendered against [subsidiary] in its absence, no relief could be granted to the plaintiff without the joinder of [subsidiary]."); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (recognizing the "general principle of corporate law" that "a parent corporation . . . is not liable for the acts of its subsidiaries").

However, Crawford Venezuela cannot be joined to this action because joinder would destroy diversity jurisdiction and this Court lacks personal jurisdiction over Crawford. (Def.'s Br. at 9; Pls.' Br. at 2.) Therefore, the Court must consider the factors articulated in Rule 19(b). These factors favor dismissal. Proceeding without Crawford Venezuela would prejudice Plaintiffs because this Court would be incapable of awarding them any relief. *Jurimex*, 201 F.R.D. at 341 (noting, in dismissing for failure to join defendant's foreign subsidiaries, that "a judgment in Plaintiffs' favor may be 'hollow' because the proper defendant was never joined"). Also, Crawford Venezuela would be prejudiced because it would be deprived of the ability to defend its conduct. *See Polanco*, 941 F. Supp. at 1523 (absent subsidiary "[would] be prejudiced without the opportunity to participate, and the Court cannot fashion any protection against this prejudice"); *Gay v. Avco Fin. Servs., Inc.*,

769 F. Supp. 51, 57 (D.P.R. 1991) (action against parent based on subsidiary's conduct should not proceed without "some form of direct representation" for the subsidiaries).  Furthermore, Plaintiffs could presumably proceed against Crawford Venezuela in Venezuela to recover for any losses caused by its negligence.

Although Crawford could be liable for Crawford Venezuela's actions if Crawford Venezuela were, in fact, an alter ego or agent of Crawford, Plaintiffs have not alleged any such relationship in their Complaint.  The Complaint makes no mention of any subsidiary relationship and asserts instead that Crawford does business as Crawford Venezuela, CA.  (Compl. ¶ 23.)  Accordingly, nothing in the Complaint provides a basis for discovery on the existence of an alter-ego or agency relationship, rendering discovery inappropriate at this time.  *See Jurimex*, 65 F. App'x at 804.  However, the Court will permit Plaintiffs to amend their Complaint to assert such theories.  Should Plaintiffs file an amended complaint, limited discovery would be required to determine whether this action could fairly proceed without Crawford Venezuela.  *See Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 432 (D. Del. 2005) (denying motion to dismiss "without prejudice to renew if, as discovery proceeds, it becomes evident that defendant cannot be liable either as a joint tortfeasor or under the agency test").

### B.  Forum Non Conveniens

The doctrine of *forum non conveniens* grants a district court discretion to dismiss an action when an alternative forum is available to hear the plaintiff's claim and the plaintiff's chosen forum is oppressive and vexatious to the defendant.  "[A] district court must first determine whether an adequate alternative forum can entertain the case."  *Windt v. Qwest Comm. Int'l, Inc.*, 529 F.3d 183, 189-90 (3d Cir. 2008) (footnote omitted); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255

n.22 (1981).  "If such a forum exists, the district court must then determine the appropriate amount of deference to be given the plaintiff's choice of forum."  *Windt*, 529 F.3d at 190.

Next, the court must weigh the relevant public and private interests to determine whether, on balance, they indicate "oppression or vexation to the defendant out of all proportion to the plaintiff's convenience" such that dismissal is warranted.  *Id.* at 189-90 (footnote omitted).  Relevant private interests include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses; (3) the possibility of viewing the premises, if appropriate; and (4) all other practical problems that make trial of the case easy, expeditious and inexpensive.  *Id.* at 189 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).  The relevant public interests have been identified as: (1) administrative difficulties due to court congestion; (2) the local interest in having local controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the state law that governs the case; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Id.* (quoting *Gilbert*, 330 U.S. at 508-09).  The defendant must establish that these "private and public interest factors weigh heavily on the side of dismissal" in order to prevail on a *forum non conveniens* motion.  *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988) (*Lacey I*).

A defendant who files a motion to dismiss pursuant to the doctrine of *forum non conveniens* must "provide enough information to enable the district court to balance the parties' interests."  *Id.* at 39.  The defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis.  *Id.* at 43-44.  "The Third Circuit has made clear that dismissal for *forum non conveniens*

10

is the 'exception rather than the rule.'" *In re Corel Corp. Inc. Sec. Litig.*, 147 F. Supp. 2d 363, 365 (E.D. Pa. 2001) (quoting *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) (*Lony II*) (additional internal quotations omitted)).

### 1.   Existence of an adequate alternative forum

In general, the existence of an alternative forum is usually established "when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n.22 (quoting *Gilbert*, 330 U.S. at 506-07). If, however, the subject matter of the litigation is not cognizable in the alternative forum or the remedy is otherwise clearly unsatisfactory, that forum will be considered inadequate for purposes of *forum non conveniens. Lacey v. Cessna Aircraft Co.*, 932 F.2d 170,180 (3d Cir. 1991) (*Lacey II*). Although a less favorable substantive law in the alternative forum should "not be given conclusive or even substantial weight in the *forum non conveniens* inquiry," the alternative forum must at least have jurisdiction to hear the case for *forum non conveniens* to apply. *Piper Aircraft*, 454 U.S. at 241, 247. Indeed, "a district court cannot dismiss on *forum non conveniens* grounds if that decision would render a plaintiff unable to pursue his or her action elsewhere." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1225 (3d Cir. 1995).

Crawford asserts that, because it is willing to submit to jurisdiction in Venezuela, Venezuela is an adequate alternative forum for purposes of the *forum non conveniens* inquiry. Crawford provides no additional information nor argument regarding Venezuela's adequacy or availability as a potential forum for this dispute. Plaintiffs do not specifically address whether Venezuela is an adequate alternative forum, instead generally arguing that their choice of forum should be entitled to deference.

The Court, however, has become aware of the possibility that Venezuela would not have

11

jurisdiction over this dispute in the wake of a *forum non conveniens* dismissal.  As explained by one commentator:

> Several countries in Latin America, including . . . Venezuela, have enacted legislation that extinguishes the jurisdiction of their courts with respect to any tort claim first filed against a foreign defendant in a foreign court but later dismissed on grounds of forum non conveniens.  The precise effect of these blocking statutes is unclear, however, because they typically indicate that jurisdiction may be restored if the resident plaintiff dismisses his foreign lawsuit and files a new action in the national court 'in a completely free and spontaneous way.'  Some U.S. courts have concluded that language means an alternative forum is not available when the plaintiff was forced out of a U.S. court due to a forum non conveniens dismissal.  Other courts have interpreted that language to mean the alternative forum is available, despite the plaintiff's unwillingness to commence suit in that forum.

WALTER W. HEISER, *Forum Non Conveniens and Retaliatory Legislation: The Impact on the Available Alternative Forum Inquiry and on the Desirability of Forum Non Conveniens as a Defense Tactic*, 56 U. Kan. L. Rev. 609, 623 (2008) (footnotes omitted).

In *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, the court denied the defendants' motions for *forum non conveniens* dismissal based on a finding that Venezuela was not an available forum for the parties' dispute.  190 F. Supp. 2d 1125 (S.D. Ind. 2002), *mandamus denied*, 344 F.3d 648 (7th Cir. 2003).  In support of their motions, the defendants submitted affidavits of experts in Venezuelan law, who opined that the Venezuelan plaintiffs could file suit in Venezuela.  The plaintiffs countered with their own expert affidavits, which indicated that Venezuelan courts would lack jurisdiction.  The relevant Venezuelan statute permitted jurisdiction if, among other things, the parties submitted to the jurisdiction of Venezuelan courts.  According to the plaintiffs' expert, however, that provision was not satisfied because the plaintiffs' initiation of suit in the United States indicated an unwillingness to submit to Venezuelan jurisdiction.  Thus, the plaintiffs' expert opined that the defendants' willingness to submit to process in Venezuela was, on

its own, incapable of establishing jurisdiction.

The court concluded that the plaintiffs' experts' opinions were more valid than those of the defendants' expert, who had not published any articles on the subject of Venezuelan law, lacked expertise in the subject, and relied on an abrogated statute to support his contrary interpretations. Since the plaintiffs' expert provided a reasonable interpretation of the relevant Venezuelan statute, "[e]nough of a question [was] raised . . . that Defendants, with their unreliable expert testimony, fail[ed] to meet their burden of persuasion that Venezuelan courts are an available alternative forum." *Id.* at 1132 (footnote omitted).

In contrast, the court in *Morales v. Ford Motor Co.* expressly disagreed with the *Bridgestone/Firestone* court's conclusion that Venezuela was an unavailable forum. Pursuant to *forum non conveniens*, the court dismissed the Venezuelan plaintiffs' product liability action against an American car manufacturer, which stemmed from an accident in Venezuela. 313 F. Supp. 2d 672 (S.D. Tex. 2004). The *Morales* court considered an affidavit from the plaintiffs' expert who opined that Venezuelan courts would not exercise jurisdiction because Plaintiffs initiation of litigation in the United States invalidated the possibility of jurisdiction pursuant to Venezuelan law. The court rejected this interpretation, however, because defendants were willing to submit to the jurisdiction of Venezuelan courts, and concluded that Venezuela was an available and adequate alternative forum. *Id.* at 676; *see also Rivas v. Ford Motor Co.*, Civ. A. No. 02-676, 2004 WL 1247018 (M.D. Fla. Apr. 19, 2004) (holding that Venezuela was available forum because it would possess jurisdiction over negligence action).

Obviously, if Venezuelan law precludes jurisdiction over Plaintiffs' claims, Venezuela is not an adequate alternative forum in which Plaintiffs could litigate this dispute. *See Bhatnagar*, 52 F.3d

13

at 1225 ("[I]t is only when some other forum that would *also* have jurisdiction is better suited to adjudicate the controversy that a district court may exercise its discretion and dismiss the case."); *see also* RAJEEV MUTTREJA, Note, *How to Fix the Inconsistent Application of Forum Non Conveniens to Latin American Jurisdiction — And Why Consistency May not be Enough*, 83 N.Y.U. L. Rev. 1607, 1609 (2008) (noting that "[*forum non conveniens*] dismissal seems doctrinally impossible when the alternative forum has rules of preemptive jurisdiction that make it unavailable").  Unfortunately, in this case, the record is bereft of expert evidence on this issue. Furthermore, neither case discussed above arose from allegedly negligent inspection of merchandise in Venezuela, which may or may not alter the jurisdictional analysis.

The Court cannot determine the proper application of Venezuelan law to this case given the dearth of evidence or argument on the subject, and it is reluctant to assume that Venezuela would exercise jurisdiction over this dispute if Plaintiffs refiled there after a *forum non conveniens* dismissal.  Crawford has failed to meet its burden on this prong of the analysis.  *See Lacey I*, 862 F.2d at 44-45 (reversing *forum non conveniens* dismissal when defendant failed to provide any evidence in support of allegations, including allegation that British Columbia was an adequate forum); *see also Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) (*Lony I*) (a defendant must provide at least "some evidence" that alternative forum is adequate); *Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 519-20 (D.N.J. 2007) (defendant failed to submit sufficient proof to establish Russia was adequate forum).  Thus, dismissal on *forum non conveniens* grounds is inappropriate because Crawford failed to meet its burden of establishing that Venezuela provides an adequate alternative forum.  Even assuming, however, that Venezuela is an adequate alternative forum, *forum non conveniens* dismissal would still be inappropriate.

2.      *Deference afforded to Plaintiffs' choice of forum*

Although a foreign plaintiff's choice of forum deserves less deference than an American citizen's selection of his home forum, a foreign plaintiff's selection is still entitled to some weight, especially when he or she is forced to choose between two inconvenient fora. *Piper Aircraft*, 454 U.S. at 255-56; *Lacey I*, 862 F.2d at 46 ("*Piper*'s language about according less deference to a foreign plaintiff's forum choice is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule.") (internal quotations omitted). "Because the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one, that reluctance can readily be overcome by a strong showing of convenience." *Lony I*, 886 F.2d at 635.

Although Plaintiffs are foreign, the Court recognizes that they were required to choose between two inconvenient fora — the United States and Venezuela. That the United States is just as inconvenient as Venezuela from Plaintiffs' perspective mitigates against any concern that this forum was chosen to oppress or harass Crawford. To the contrary, Crawford is an American company that does business in Pennsylvania. Thus, this Court cannot conclude that trial in the United States would be wholly inconvenient. Furthermore, some evidence pertaining to Plaintiffs' agency or alter-ego theory would likely be located in the United States, albeit most likely at Crawford's headquarters in Georgia. However, that Plaintiffs picked a forum within the United States — Pennsylvania — with no apparent relation to the instant dispute and in which no source of proof is located decreases the amount of deference to which they are entitled. *Compare Lony I*, 886 F.2d at 634 (more deference warranted to foreign plaintiff's choice of forum when several

sources of proof located in forum and because forum was home to defendant's headquarters).

Ultimately, since Plaintiffs were required to choose between the United States and Venezuela, neither of which are their home forum, and since Crawford is an American company doing business in Pennsylvania, the Court will afford Plaintiffs' choice of forum considerable deference.  *See Delta Airlines, Inc. v. Chimet S.P.A.*, Civ. A. No. 07-2898, 2008 WL 5336720, at *3 (E.D. Pa. Dec. 19, 2008) (affording "considerable deference" to Italian plaintiff's selection of Pennsylvania, even though defendant was Delaware corporation with a principal place of business in Georgia, because the United States was defendant's home forum).  Plaintiffs' choice of forum will not be disturbed unless Crawford establishes, by a fair preponderance of evidence, that dismissal is warranted.  *See Lacey II*, 932 F.2d at 179; *see also Lony II*, 935 F.2d at 609.

        3.     *Private interests*

The private factors do not outweigh Plaintiffs' choice of forum.  Access to proof and availability of witnesses are the key factors the Court must consider in this case, since a view of the premises is unnecessary and neither party has identified any practical problems that would impede trial here.  "In examining the relative ease of access to sources of proof, and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action."[4]  *Lacey I*, 862 F.2d at 46 (internal quotations omitted).

---

[4] Neither party has identified with any particularity the key witnesses to be called at trial nor the key evidence needed to prove their claims or defenses.  Crawford's failure to file even an affidavit in support of its motion raises a question as to whether it could meet its burden of proof. *Compare Piper Aircraft*, 454 U.S. at 258 (affidavits describing evidentiary problems that would exist if trial were held in the United States satisfied burden of proof; the affidavit identified the

Crawford asserts that Plaintiffs' case will depend on communications between their representatives (who are located in Germany) and representatives of Crawford Venezuela (who are located in Venezuela), and paperwork associated with the two inspections (which is located at Crawford Venezuela's offices in Venezuela). Furthermore, Crawford asserts that the parties' experts "will likely hail from Venezuela." (Def.'s Br. at 14.) Plaintiffs counter that the private factors do not outweigh their choice of forum because all of the relevant documents are within Defendant's control and the key witnesses will be the parties' experts, who are not yet identified.

Notably, despite Crawford's arguments that evidence is located in Venezuela, Crawford does not argue that the relevant documents and witnesses are outside its control or that it would have difficulty accessing these sources of proof. Since the relevant documents are located at Crawford Venezuela's offices, Crawford, as the parent company, should easily be able to produce those documents. Indeed, Crawford Venezuela's final reports of the two inspections, which will likely be key documents in this litigation, are already before the Court in connection with the instant motion, and, conveniently, are written in English. (Def.'s Mot. Ex. B & Ex. C.) Likewise, as the parent company of Crawford Venezuela, Crawford should be able to produce employees of Crawford Venezuela to testify at trial if necessary. Although transport of these witnesses to the United States would presumably impose additional costs on Crawford, there is no evidence that any such costs would be "oppressive" and thus, Plaintiffs' choice of forum is not outweighed.

Also, as Plaintiffs point out, this case will be won or lost on the basis of expert testimony

---

witnesses defendant would call, many of whom were foreign) *with Lacey I*, 862 F.2d at 40 (reversing dismissal pursuant to *forum non conveniens* because defendants, who did not support their motion with any affidavits, did not submit sufficient information to inform the court's analysis). The Court need not decide this issue, however, because Crawford's arguments do not persuade this Court that the private and public factors mandate dismissal.

pertaining to the relevant standards of care and industry customs.  There is no evidence that retaining an expert would impose "oppressive" costs, even if Defendant feels compelled to hire an expert located in Venezuela.  Furthermore, documents pertaining to any agency or alter-ego relationship between Crawford and Crawford Venezuela and witnesses with knowledge of any such relationships may very well be located in the United States in addition to Venezuela.

Although many documents and witnesses relevant to this litigation are located in Venezuela, there is no indication that the parties will encounter problems accessing the evidence needed to establish their claims or defenses.  The mere fact that this action is based on inspections that took place in Venezuela or that witnesses are located there is insufficient to establish oppression or vexatiousness for purposes of the relevant private interests.  Ultimately, trial in the United States would not pose any access problems and, without a showing of inconvenience, the private interests provide no basis for disturbing Plaintiffs' choice of forum.  *Compare Lacey II*, 932 F.2d at 183-86 (defendant's lack of control over key evidence was determinative in court's conclusion that trial in British Columbia would not provide plaintiff sufficient access to evidence).

### 4.  *Public interests*

Although the public interests favor dismissal, they do not outweigh the deference owed to Plaintiff's forum selection.  "In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct . . . and the connection of that conduct to plaintiff's chosen forum."  *Lacey I*, 862 F.2d at 48 (internal quotations omitted).  Pennsylvania's only connection with this dispute is that Crawford does business in Pennsylvania.  Pennsylvania has little interest in Crawford's subsidiary's dealings in Venezuela with German Plaintiffs.  Furthermore, the conduct at issue — inspections of two shipments of damaged apples — occurred in Venezuela and has no

18

connection to Pennsylvania.  In contrast, Venezuela has a significant interest in ensuring that companies operating within its borders, such as Crawford Venezuela, operate appropriately when performing services.  Venezuela thus has a more significant interest in this dispute than Pennsylvania.

However, the United States, as a country, has an interest in ensuring that American businesses are held responsible, when appropriate, for their conduct abroad.  *See Windt*, 529 F.3d at 193 (recognizing that "the United States has an interest in redressing wrongful conduct engaged in by a U.S. corporation").  Thus, if an American entity was using a foreign subsidiary as an alter-ego or agent, as Plaintiffs contend in their response Crawford did here, the United States would have an interest in holding that company responsible for its agent's actions in accordance with the law. Although Venezuela's interest in this dispute is greater than the United States's interest since the inspections were conducted by a Venezuelan company in Venezuela, the interest of this country in redressing harms caused by American corporations abroad cannot be ignored.

Whether the interest in having the trial of a diversity case in a forum that is familiar with the state law governing the case and the avoidance of unnecessary problems in the application of foreign law weigh in favor of dismissal depends on the law that applies to this case.  Since this is a diversity case, the Court is required to apply the choice of law rules of the forum in which it sits, Pennsylvania. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Pennsylvania's choice of law rules require a court to determine whether a conflict exists between Pennsylvania's laws and the laws of the other forum, here, Venezuela. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007).  If a "true conflict" exists, meaning that both jurisdictions' governmental interests would be impaired by the application of the others' laws, the court must determine which

jurisdiction has the most significant interest in the application of its law based on the jurisdictions' contacts with the dispute and the governmental interests implicated by those contacts. *Id.* at 231.

Although this Court will not engage in a conflicts analysis at this time, if a conflict exists between Venezuelan and Pennsylvania law, Venezuela law would likely apply because this case concerns the conduct of a Venezuelan company in Venezuela and, as discussed above, Venezuela has more of an interest in this lawsuit than Pennsylvania. The possibility of applying foreign law to this case weighs in favor of dismissal.

Neither party has submitted any evidence regarding the "court congestion" public interest factor and the Court will not speculate on the level of congestion in Venezuelan courts. However, since this Court is fully capable of managing the instant lawsuit on its docket without delay, this factor weighs in favor of retaining jurisdiction.

Overall, the public factors favor dismissal, however, without any contribution from the private factors, they do not overcome the deference owed to Plaintiffs' choice of forum. *See Onischenko*, 536 F. Supp. 2d at 522 (denying motion to dismiss on *forum non conveniens* grounds even though Russian law might apply). Although the trial of a Venezuelan-based dispute in Pennsylvania would be slightly inconvenient, particularly if this Court were required to apply Venezuelan law, the Court cannot conclude that it would be sufficiently oppressive or vexatious to warrant dismissal. *See Lacey II*, 932 F.2d at 180 ("If, when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied.").

**III.      CONCLUSION**

The doctrine of *forum non conveniens* does not mandate dismissal of this action.  However, since Crawford Venezuela's acts and omissions form the basis of Plaintiffs' claims and joinder is not feasible, Crawford Venezuela is an indispensable party to this lawsuit against its corporate grandparent.  Plaintiffs should, however, be entitled to amend their Complaint to plead agency and alter-ego theories against Crawford.  If Plaintiffs fail to amend their Complaint, this action will be dismissed for failure to join an indispensable party.  An appropriate Order will be docketed with this Memorandum.